UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VLADIMIR EMILIO MESA

      Petitioner,

v.                                                            Case No. 8:08-cv-983-T-23MAP

SECRETARY, Department of Corrections,

      Respondent.

_____/

## O R D E R

     Vladimir Emilio Mesa petitions for the writ of habeas corpus pursuant to 28

U.S.C. § 2254 (Doc. 1) and challenges the validity of his state conviction for

second-degree murder.  Mesa alleges one claim of trial court error and several claims of

ineffective assistance of trial counsel.  Numerous exhibits ("Respondent's Exhibit __")

support the response.  (Doc. 9)

## FACTS[1]

     Co-workers Mesa and Michel Montesino argued at work, and both left the

premises.  Mesa drove a white, four-door Pontiac and Montesino drove a pick-up truck.

While delivering goods to a nearby business, Heriberto Rios[2] saw Mesa and Montesino

pull into the parking lot and stop and saw each exit his car.  Rios saw one of the men

draw a gun and shoot the other.  The shooter, fleeing in his car, passed Rios's truck.

---

[1]  This summary of facts derives from Mesa's brief on direct appeal (Respondent's Exhibit 1) and evidence adduced at trial.

[2]  Rios was the only eyewitness to the murder.

Rios entered a nearby business and asked an employee to call the police.  Rios later described to the police both the shooter and the shooter's vehicle and identified Mesa from a photographic lineup.  The police were unable to locate Mesa or his vehicle.  The police later discovered that on the day of the crime Mesa's brother (Fidel Mesa) rented a car and drove Mesa to Texas.  The police found Mesa's car parked near Fidel's residence.  Mesa was arrested nearly four months later and indicted for first-degree murder.  A jury convicted Mesa of the lesser-included offense of second-degree murder with a firearm.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding.  Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly deferential standard for federal court review of state court adjudications, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one."  Bell v. Cone, 535 U.S. at 694.  See Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme court "as of the time of the relevant state-court decision."  Williams v. Taylor, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693  (2002).  Federal courts must afford due deference to a state court's decision.  "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle

to second-guess the reasonable decisions of state courts."  <u>Renico v. Lett</u>, _____ U.S.

_____, 130 S. Ct. 1855, 1866 (2010).

In a <u>per curiam</u> decision without a written opinion the state appellate court

affirmed Mesa's conviction and sentence on direct appeal.  (Respondent's Exhibit 5)

Similarly, in another <u>per curiam</u> decision without a written opinion the state appellate

court affirmed the denial of Mesa's subsequent Rule 3.850 motion to vacate.

(Respondent's Exhibit 15)  The state appellate court's <u>per curiam</u> affirmances warrant

deference under Section 2254(d)(1) because "the summary nature of a state court's

decision does not lessen the deference that it is due."  <u>Wright v. Moore</u>, 278 F.3d 1245,

1254 (11th Cir.), <u>reh'g and reh'g en banc denied</u>, 278 F.3d 1245 (2002), <u>cert. denied</u>

<u>sub nom Wright v. Crosby</u>, 538 U.S. 906 (2003).

Mesa bears the burden of overcoming a state court factual determination by clear

and convincing evidence.  "[A] determination of a factual issue made by a State court

shall be presumed to be correct.  The applicant shall have the burden of rebutting the

presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

This presumption of correctness applies to a finding of fact, but not to a mixed

determination of law and fact.  <u>Parker v. Head</u>, 244 F.3d 831, 836 (11th Cir.), <u>cert.</u>

<u>denied</u>, 534 U.S. 1046 (2001).  The state court's rejection of Mesa's post-conviction

claims warrants deference in this action.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Mesa claims ineffective assistance of counsel, a difficult claim to sustain.  "[T]he

cases in which habeas petitioners can properly prevail on the ground of ineffective

assistance of counsel are few and far between."  Waters v. Thomas, 46 F.3d 1506,

1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir.

1994)).  Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective

assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled
> and well documented.  In Strickland v. Washington, 466 U.S. 668, 104
> S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a
> two-part test for analyzing ineffective assistance of counsel claims.
> According to Strickland, first, the defendant must show that counsel's
> performance was deficient.  This requires showing that counsel made
> errors so serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second, the
> defendant must show that the deficient performance prejudiced the
> defense.  This requires showing that counsel's errors were so serious as
> to deprive the defendant of a fair trial, a trial whose result is reliable.
> Strickland, 466 U.S. at 687, 104 S. Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent

prejudice.  Strickland, 466 U.S. at 697 ("There is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the

defendant makes an insufficient showing on one."); Sims, 155 F.3d at 1305 ("When

applying Strickland, we are free to dispose of ineffectiveness claims on either of its two

grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance and

made all significant decisions in the exercise of reasonable professional judgment."

Strickland, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must

judge the reasonableness of counsel's challenged conduct on the facts of the particular

case, viewed as of the time of counsel's conduct."  466 U.S. at 690.  Strickland requires

that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  466 U.S. at 690.

Mesa must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92.  To meet this burden, Mesa must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91.  Mesa cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . .  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  Accord Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent or

appropriate, but only what is constitutionally compelled.'") (en banc) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).  See also Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

## I.  VOIR DIRE

Mesa asserts four grounds challenging voir dire.  "The purpose of voir dire is to ascertain whether potential jurors can render a verdict solely on the basis of evidence presented and the charge of the trial court."  Wilcox v. Ford, 813 F.2d 1140, 1150 (11th Cir. 1987).  "Voir dire plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored."  Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981).  See also J.E.B. v. Ala. ex rel. T.B., 511 U.S. 127, 143-44 (1994) ("Voir dire provides a means of discovering actual or implied bias and a firmer basis upon which the parties may exercise their peremptory challenges intelligently."); Mu'Min v. Virginia, 500 U.S. 415, 431 (1991) ("Voir dire examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges.").

Effective assistance of counsel is required during voir dire.  Brown v. Jones, 255 F.3d 1273, 1278-9 (11th Cir. 2001).  However, counsel's questions and tactics during voir dire are a matter of trial strategy.  "Decisions on selection of a jury are among the many entrusted to counsel rather than to defendants personally."  United States v. Boyd, 86 F.3d 719, 723 (7th Cir. 1996), cert. denied, 520 U.S. 1231 (1997).  "A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be 'so ill chosen that it permeates the entire trial

with obvious unfairness.'"  Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir. 1995).

Because empaneled jurors are presumed impartial, see Smith v. Phillips, 455 U.S. 209,

215 (1982), to satisfy Strickland's prejudice prong Mesa must show that the juror

selection process produced a juror that was actually biased against him.  Hughes, 258

F.3d at 458.  See also Rogers v. McMullen, 673 F.2d 1185, 1189 (11th Cir. 1982)

(defendant's Sixth Amendment right to a fair and impartial jury not violated absent a

showing that a juror hearing the case was actually biased against him).

**Grounds One and Six**

In ground six Mesa contends that trial counsel rendered ineffective assistance

during voir dire by failing to object to the prosecutor's comment about the burden of

proof.  Mesa challenges the comment, "It's the State that has to present the evidence in

this case.  Okay.  Not that [Mesa]'s prohibited but it's the State, the law says the State

has the burden of proof."  (Respondent's Exhibit 18, Vol. II, p. 36)  Mesa alleges that

"[t]he inference that could be drawn from the comment was that [Mesa] would be

expected to produce evidence of [h]is innocence."  (Doc. 1, p. 28)

Relying upon the same portion of the trial transcript, Mesa contends in ground

one that trial counsel rendered ineffective assistance during voir dire by failing to

challenge allegedly biased juror Paul Blackford.  Mesa claims that Blackford erroneously

believed that both the prosecution and the defense bore the burden of producing

evidence at trial and that counsel's failure to challenge Blackford for cause resulted in

Mesa's conviction.

The state post-conviction court rejected the claim presented in ground six (failure to object to the prosecutor's comment about the burden of proof) without an evidentiary hearing:

> In [this] ground, Defendant claims defense counsel was constitutionally ineffective by failing to object to the prosecutor's statement concerning the burden of proof.  Specifically, Defendant claims that the State's improper questioning misled the jury into believing that the Defendant would produce some evidence.
>
> A review of the [trial] transcript reflects that [the prosecutor] questioned the potential jurors as follows:
>
>> [PROSECUTOR]:   Paul Blackford.  Knowing that there was a difference between direct and circumstantial evidence, who has the burden of producing on[e] or the other or both?
>>
>> [PROSPECTIVE JUROR MR. BLACKFORD]:          The attorneys both.
>>
>> [PROSECUTOR]:   The attorneys, both.
>>
>> [PROSPECTIVE JUROR MR. BLACKFORD]:          Both of the attorneys.
>>
>> [PROSECUTOR]:   No, no, no, no, no, no, no, no, the people of the State of Florida have the burden.  The defendant has absolutely no burden whatsoever.  He does not have to present one scintilla of evidence in this case.  Okay.  Not that he's prohibited but it's the State, the law says the State has the burden of proof.
>>
>> Let me give you an example of that.  If you for some strange reason had to decide this case at this very moment, at this very moment, okay, your verdict would have to be not guilty.  Do you understand what I'm saying?  Did you all hear what I said?  If for some strange reason you had to make a decision about this

> case at this very moment your verdict would have to
> be not guilty.  Why?
>
> [PROSPECTIVE JUROR
> MS. HAM]:              No evidence had been proven.
>
> [PROSECUTOR]:   And who has the burden?
>
> [PROSPECTIVE JUROR
> MS. HAM]:              You do, sir.
>
> After reviewing the [trial] transcript, the Court finds that the State's
> questioning during voir dire regarding the production of evidence did not
> prejudice the jurors.  Consequently, Defendant has failed to meet the first
> prong of <u>Strickland</u> in that he has failed to prove that counsel acted
> deficiently in failing to object to the State's questioning of potential
> witnesses [sic].  Since Defendant has failed to meet the first prong of
> <u>Strickland</u>, it is unnecessary to address the prejudice component.  <u>See
> Downs v. State</u>, 740 So. 2d 506, 518 n.19 (Fla. 1999).  As such, no relief
> is warranted upon [this] ground.

(Respondent's Exhibit 10, pp. 7-8) (court's record citations omitted).

Considered in context, the prosecutor's comment accurately described the

burden of proof.  Counsel had no basis upon which to object to the comment as Mesa

suggests.  Mesa fails to support his speculative contention that the venire

misunderstood the burden of proof and fails to demonstrate either deficient performance

or resulting prejudice under <u>Strickland</u>.  Based on Mesa's unsubstantiated allegations,

the state court's rejection of this claim amounts to neither an unreasonable application

of <u>Strickland</u> nor an unreasonable determination of the facts.  <u>See</u> 28 U.S.C.

§ 2254(d)(1), (2).  Ground six warrants no federal habeas relief.

The state post-conviction court rejected the claim presented in ground one

(failure to challenge biased juror) after an evidentiary hearing:

> Defendant alleges counsel was ineffective by failing to challenge a biased
> juror.  Specifically, Defendant claims counsel was ineffective for failing to

remove Paul Blackford from the jury when Mr. Blackford stated that both attorneys had a burden of proof to meet.

A review of the transcript from the evidentiary hearing reflects counsel testified[3] that he did not recall there being an issue with juror Mr. Blackford, who allegedly stated that the prosecution and the defense had a burden of proof to meet.  Furthermore, Defendant has failed to meet his burden of proof that this error would have resulted in an acquittal.  Based upon the testimony presented at the evidentiary hearing, the Court finds the testimony presented by counsel to be highly credible.  Smith v. State, 697 So. 2d 991, 992 (Fla. 4th DCA 1997) (stating that following an evidentiary hearing the finder of fact can rely upon testimony it finds to be credible).

------------------------------

[3]  Counsel testified on direct examination at the Rule 3.850 evidentiary hearing:

Q:    There was a juror that was on the potential panel, Mr. Paul Blackford, who had testified generally that both of the - - the attorneys, being yourself and the prosecution, had a burden of proof to meet.  Do you recall that?

A:    No.

Q:    Do you recall if you allowed Mr. Mesa to participate in the actual jury selection?

A:    I would guess that I would have allowed him to participate to the extent that he was preparing voir dire questions for me, no [sic].  But, you know, let me say I didn't prohibit him from telling me anything he wanted to tell me.  I'm sure he had a pad of paper, a pencil, I'm certain.  We had an interpreter, I'm certain.  And, you know, whatever he wanted to do he could do.  I mean, I didn't tell him not to do anything but I didn't actively seek his advice on how to pick a jury, I can tell you that.

I may have asked him, as I usually do, you know, when we're done with voir dire, [is there] anybody in particular that you just really don't like or anybody in particular that you really do like?  That's typically the question I ask and if they don't like one particular person I strike them for their benefit, but beyond that I don't typically seek a whole lot of advice on jury selection from my clients.

Q:    Do you recall if you would have explained to Mr. Mesa what a legal challenge for cause is?

A:    I'm sure I did not.

Q:    Same question for peremptory challenge.

A:    I'm sure I did not .

(Respondent's Exhibit 11, pp. 48-49).

> Therefore, the Defendant has failed to show that counsel's performance
> was deficient or that he was prejudiced.  As such, the Defendant is not
> entitled to relief on [this] ground of his Motion for Postconviction Relief.

(Respondent's Exhibit 12, p. 2) (court's record citation omitted).

The same portion of the record (Respondent's Exhibit 18, Vol. II, pp. 35-36) cited above by the state post-conviction court in its order rejecting the claim raised in ground six supports the rejection of ground one.  Despite Blackford's erroneous belief that both attorneys bore the burden of presenting evidence, the prosecutor clearly advised the venire that only the prosecution had to present evidence at trial.  Although he served on the jury, Blackford was the alternate juror and did not deliberate Mesa's guilt or innocence.  (Respondent's Exhibit 18, Vol. IV, pp. 369-71)  Mesa's assertion that, if counsel had challenged Blackford for cause, the trial judge would have had "to remove Blackford based on [Blackford's] expectations of [the] defense" is speculative.  Mesa's claim for relief fails because he neither shows actual bias by Blackford nor establishes that, if trial counsel had performed as now suggested, the jury would have acquitted Mesa.  Hughes, 258 F.3d at 458; Strickland, 466 U.S. at 694.  Mesa fails to establish that the state post-conviction court either unreasonably applied Strickland or unreasonably determined the facts in rejecting this ineffective assistance claim.  See Patton v. Young, 467 U.S. 1025 (1984) (state trial judge's determination of an individual juror's impartiality is entitled to a presumption of correctness on federal habeas review under 28 U.S.C. § 2254(d)).

**Ground Two**

Mesa contends that trial counsel rendered ineffective assistance by failing to request the court instruct the venire that Mesa faced a life sentence upon conviction. Mesa argues that if counsel had requested that instruction, "the potential jurors would not have been as predisposed to convict [Mesa] as they were once they were instructed not to be concerned with [Mesa] being put to death if convicted."  (Doc. 1, p. 12)

The state post-conviction court rejected this claim in Mesa's Rule 3.850 motion without an evidentiary hearing:

> In ground 4 [of the Rule 3.850 motion], Defendant claims defense counsel was constitutionally ineffective by failing to request [a] penalty instruction in a capital case.  Specifically, Defendant claims trial counsel should have requested that the Court instruct the jury on the penalty that the Defendant was facing in the absence of the death penalty.  However, a review of the [trial] transcript reflects the following:

| | |
|---|---|
| THE COURT: | All right.  Are you all going to be asking me to inform the jury that this is not a death penalty case? |
| [PROSECUTOR]: | If the Court does not, I would.  I intend to. |
| [COUNSEL]: | Judge, I don't have a problem with you doing that. |
| [THE COURT]: | Okay. |
| [PROSECUTOR]: | I don't have a problem. |
| [THE COURT]: | You're going to need to let them know, though, that they're not - - knowing that this is not a death penalty case they should not be concerned with the sentence at all, that's not their concern. |
| [COUNSEL]: | Perhaps you can address that with them when you ask them, you know, if they |

|  | know [the prosecutor] and I, that type of thing. |
| . . . |  |
| [THE COURT]: | Ladies and gentlemen, good morning. This is a criminal trial.  It is the State of Florida versus Vladimir Emilio Mesa. Mr. Mesa is charged with one count of murder in the first degree.  Just so you will know, the State of Florida is not seeking the death penalty in this case. I[f] you are chosen as a juror it will be your duty to determine if the defendant has been proven guilty or not in accord with the law. |
|  | It is the judge's job to determine a proper sentence if the defendant is guilty.  I tell you that at the beginning so you will not be concerned with whether or not this is a death penalty case and to let you know that it is not to be of your concern with regard to sentencing.  That will be my job if in fact the jury returns a verdict of guilt. |

Therefore, the Court instructed the prospective jurors that the Defendant was not facing the death penalty as a result of a conviction. Consequently, Defendant has failed to meet the first prong of <u>Strickland</u> in that he has failed to prove that counsel acted deficiently in failing to request a penalty instruction.  Since Defendant has failed to meet the first prong of <u>Strickland</u>, it is unnecessary to address the prejudice component. <u>See</u> <u>Downs v. State</u>, 740 So. 2d 506, 518 n.19 (Fla. 1999).  As such, no relief is warranted upon [this] ground.

(Respondent's Exhibit 10, pp. 5-6) (court's record citations omitted).

The trial judge correctly advised the jury of his responsibility to sentence Mesa

upon conviction.  Florida Rule of Criminal Procedure 3.390(a) states in relevant part:

Except in capital cases, the judge shall not instruct the jury on the sentence that may be imposed for the offense for which the accused is on trial.  <u>See</u> Fla. R. Crim. P. 3.390(a).

- 14 -

"[R]ule [3.390(a)] has been construed to mean that the jury need only be instructed as to the possible penalty when it is faced with the choice of recommending either the death penalty or life imprisonment."  Nixon v. State, 572 So. 2d 1336, 1345 (Fla. 1990). Because Mesa faced no potential death sentence, trial counsel had no basis for requesting that the trial judge advise the jury of Mesa's potential sentence.  Mesa fails to establish that the state post-conviction court either unreasonably applied Strickland or unreasonably determined the facts in rejecting this ineffective assistance claim.  See 28 U.S.C. § 2254(d).

**Ground Three**

Mesa contends that trial counsel rendered ineffective assistance by failing to conduct a pretrial criminal background check of prosecution witness Heriberto Rios. Mesa argues that "[i]t was essential to [his] line of defense to impeach Mr. Rios['s] testimony with prior acts of dishonesty in an attempt to at least deflate" Rios's credibility. (Doc. 1, p. 16)  The state post-conviction court rejected this claim without an evidentiary hearing:

> In ground 3 [of the Rule 3.850 motion], Defendant claims defense counsel was constitutionally ineffective by failing to diligently investigate the State's witness.  Specifically, Defendant claims trial counsel failed to run a criminal background check on Heriberto Rios prior to trial.  Defendant claims that the criminal record of Mr. Rios should have been used to impeach his credibility at trial.
>
> However, a review of the [trial] transcript reflects the following:

| [COUNSEL]: | Judge, can we approach before [the prosecutor] gets started? |
|---|---|
| THE COURT: | Yes, sir. |

- 15 -

| | |
|---|---|
| [COUNSEL]: | Have you printed a criminal history yet for me? |
| [PROSECUTOR]: | I don't know of any criminal history for this defendant - - for this witness, I mean. |
| [COUNSEL]: | Okay.  Did you run one? |
| [PROSECUTOR]: | No. |
| [COUNSEL]: | Okay.  That's something I requested, Judge, you know, he said no when I asked him in depo[sition], I think. |
| [PROSECUTOR]: | I said no, I hadn't run one. |
| [COUNSEL]: | No, no, when I asked him in depo[sition] he said no, but I was suspect and I asked [the prosecutor] to run one. |
| THE COURT: | Do you have his information? |
| [PROSECUTOR]: | His criminal history? |
| THE COURT: | No, do you - - |
| [PROSECUTOR]: | His background. |
| THE COURT: | Do you have his background information? |
| [PROSECUTOR]: | Uh-huh. |
| THE COURT: | Have someone in you[r] office run it right now. |

Therefore, a criminal background check was conducted on the witness on [the first day of trial].  Consequently, Defendant has failed to meet the first prong of <u>Strickland</u> in that he has failed to prove that counsel acted deficiently in failing to diligently investigate the witness.  Since Defendant has failed to meet the first prong of <u>Strickland</u>, it is unnecessary to address the prejudice component.  <u>See</u> <u>Downs v. State</u>, 740 So. 2d 506, 518 n.19 (Fla. 1999).  As such, no relief is warranted upon [this] ground.

(Respondent's Exhibit 10, pp. 3-4) (court's record citations omitted).

The record shows that counsel asked the prosecutor before trial to run a background check on Rios.  When the prosecution called Rios as a witness at trial, the background check was still outstanding and the trial judge directed the prosecutor to run the background check on Rios.  (Respondent's Exhibit 18, Vol. II, pp. 178-79)  At the conclusion of Rios's trial testimony, the prosecutor agreed to stipulate to a criminal record if Rios had one and trial counsel raised no objection.[4]  Mesa fails to present any evidence to support his contention that Rios had a history of "prior acts of dishonesty."  Consequently, the state court correctly ruled that counsel's performance was not deficient.  Even assuming that counsel had a duty to conduct a background check on Rios before trial and assuming that Rios did, in fact, have a history of crimes of dishonesty, Mesa fails to establish that if counsel had impeached Rios with this information the jury would have acquitted Mesa.  Absent a showing of prejudice, a claim of ineffective assistance of counsel cannot succeed because the requirements of Strickland remain unsatisfied.  Mesa fails to meet his burden of proving that the state court's rejecting this claim resulted in either an unreasonable application of Strickland or an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).

---

[4] The prosecutor advised the court:

> I still have not received word regarding [Rios]'s criminal record.  I will stipulate to a criminal record if one comes up and the witness is no longer present.  We can do a stipulation.

(Respondent's Exhibit 18, Vol. II, p. 219).

**Ground Four**

Mesa contends that trial counsel rendered ineffective assistance by failing to pursue a defense of self-defense.  Mesa alleges that he advised counsel how the altercation occurred and in this petition he alleges the following:

> [Mesa] got into an altercation with [the victim] who slapped him around on the job and took items from [Mesa] that [Mesa] was loading onto his truck. [Mesa] fled his job in fear of [the victim] because [the victim] told [Mesa] that the fight was not over, that he was going to kill [Mesa]. [Mesa] informed [counsel] that as [Mesa] was driving, he spotted the victim in his rearview mirror following him.  . . .  [T]he victim was waving what [Mesa] thought was a machete at him and blowing the horn. [Mesa] told counsel that he attempted to elude the victim by going around a semi truck . . . [but] found himself blocked between a locked gate and the victim's truck.  The victim got out of [his] truck with the machete then put it back inside through the open window and came out with a gun.  As the victim approached him, [Mesa] pulled his own gun and they started to fire at each other.  [Mesa] was not injured and after taking the victim's gun [Mesa] fled the scene in fear and found the victim's gun was jammed.

(Doc. 1, p. 20)  Mesa claims that counsel rendered ineffective assistance by presenting a defense of mistaken identity rather than self-defense.

The state post-conviction court rejected this claim in Mesa's Rule 3.850 motion after an evidentiary hearing:

> In [this] ground of his [Rule 3.850] motion, Defendant alleges counsel was ineffective by failing to raise a defense of self-defense in his case. Specifically, Defendant claims that counsel should have raised the argument that Defendant was in fear because the victim said he was going to kill the Defendant.  Defendant further claims that counsel should have argued that the Defendant acted in self-defense.
>
> At the evidentiary hearing, counsel testified that the Defendant always maintained that he never murdered the victim or had "anything to do with any murder . . . . "  The testimony further reflects that based on Defendant's assertions, counsel pursued a defense of misidentification. Counsel further testified that the Defendant never told him that he wanted to argue self-defense.

Based upon this testimony presented at the evidentiary hearing, the Court finds the testimony presented by defense counsel to be highly credible. Smith v. State, 697 So. 2d 991, 992 (Fla. 4th DCA 1997) (stating that following an evidentiary hearing the finder of fact can rely upon testimony it finds to be credible).  Furthermore, "counsel's strategic decisions will not be second-guessed on collateral attack."  Johnson v. State, 769 So. 2d 990, 1001 (Fla. 2000).  Moreover, "[s]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct."  Occhicone v. State, 768 So. 2d 1037, 1048 (Fla. 2000).  Therefore, the Defendant has failed to show that counsel's performance was deficient or that he was prejudiced.  The Court finds that the Defendant never indicated that he acted in self-defense and, therefore, counsel proceeded with a misidentification defense.  As such, the Defendant is not entitled to relief on [this] ground of his Motion for Postconviction relief.

(Respondent's Exhibit 12, pp. 3-4) (court's record citations omitted).

Mesa testified during the Rule 3.850 evidentiary hearing that he advised counsel about both the circumstances of the shooting and how the victim had threatened him. (Respondent's Exhibit 11, pp. 22-23)  Counsel testified on direct examination at the evidentiary hearing that Mesa never advised him that the shooting was self-defense:

Q:    Did Mr. Mesa explain to you what had happened during this incident?

. . .

A:    Sure he did.

Q:    Okay.  And did [Mesa] tell you that this was self-defense?

A:    Never.  He told me he never murdered the guy.  In a nutshell what happened, according to him, was this was a fight on a loading dock at a place that he worked.  The other guy was messing with him basically and they go[t] into an argument, they got into a fight, either one or both of them were sent home by the boss.  And that was it.  He had nothing to do with any murder and didn't know anything about any murder.  That was . . . the story from day one.  He didn't kill anyone.

Q:     Did he indicate to you that the victim had slapped him at work and
       chased him with a machete?

A:     I believe he might have.  You know, I don't remember specifics but I
       know he blamed it heavily on the other fellow, the fellow that was
       bothering him over pallets, palletes (speaking Spanish), or
       whatever the - - the - - was on the pallets, I don't remember now,
       that they were loading and the other guy - - you know what I mean,
       he basically said the guy was an aggressor with him.  That
       preceded the murder.  That was an argument and a - - and a
       physical fight that they had and then it got broken up by people on
       the loading dock and they got sent home.  Either one or both of
       them, I don't remember.

       And at some time later is when - - is when a car came back
       following the car that the victim was in, they both came
       back - - two cars came back to the parking lot outside of this
       business.  A guy got out of one car, walked to the other car
       where the victim was and shot him numerous times.  And
       [Mesa's] position was, "That ain't me, I had nothing to do
       with that."  That  - - that was our - - that was our defense.  It
       was an identification defense because I think the only ID
       was - - I want to say from a truck driver who happened to be
       pulling in the loading dock at the time.  You know, unrelated
       to these people, just a guy driving a semi, unloading
       whatever he was unloading, and saw what happened and his
       ID was weak.

Q:     Did you ever discuss with Mr. Mesa using a defense of self-defense
       or was it always an identification defense?

A:     I don't remember anything about a - - about a self-defense and
       I - - I don't know why I would have discussed that because, again,
       his position was he didn't kill him.  Not I killed him in self-defense.
       The position was, "I had nothing to do with this.  I - - I did fight the
       guy but I didn't kill the guy.  I don't know who killed him later on."

(Respondent's Exhibit 11, pp. 40-42).

Counsel further testified on cross-examination:

Q:     [Counsel], it was in fact your trial strategy in this case from the
       outset that this was a mis[identification] case?

A:     Yes.

- 20 -

Q:     And there was - - throughout your cross-examination of Mr. Rios
       you brought out inconsistencies within his - - within his
       identification?

. . .

A:     Yes.  Yes.

. . .

Q:     And never - - and never did Mr. Mesa in fact tell you that he wanted
       you to argue self-defense in this case?

A:     No.  I mean, self-defense wasn't an issue.  He would have to have
       admitted killing him - -

Q:     Okay, and he'd told - - he'd told you he didn't?

A:      - - for self-defense.

Q:     And he told you he didn't?

A:     Never said he killed him.

(Respondent's Exhibit 11, p. 50).

In denying relief on this ineffective assistance claim, the state post-conviction

court found counsel's testimony more credible than Mesa's testimony.  The state trial

court's credibility determination is presumed correct.  See Baldwin v. Johnson, 152 F.3d

1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination

and thus credit [the attorney's] testimony over" the petitioner's.), cert. denied, 526 U.S.

1047 (1999); Devier v. Zant, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state

court concerning historical facts and assessments of witness credibility are . . . entitled

to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."), cert.

denied, 513 U.S. 1161 (1995).  Relying only upon his unsupported contention, Mesa

fails to overcome the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).  Mesa fails to meet his burden of proving that the state court

unreasonably applied Strickland or unreasonably determined the facts in rejecting this

claim.  See 28 U.S.C. § 2254(d).

**Ground Five**

      Mesa contends that trial counsel rendered ineffective assistance during voir dire

by failing to object to the prosecutor asking a venireperson, "Does it surprise you to

know, ma'am, that very seldom do suspects tell law enforcement officers whether or not

they intended to kill another person?"  Mesa alleges that this question improperly

attacked his right to remain silent.

      The state post-conviction court rejected this claim in Mesa's Rule 3.850 motion

without an evidentiary hearing:

> In [this] ground [of the Rule 3.850 motion], Defendant claims defense
> counsel was constitutionally ineffective by failing to object to the
> prosecutor's statement.  Specifically, Defendant claims that the prosecutor
> asked a prospective juror the following:  "[D]oes it surprise you to know,
> ma'am, that very seldom do suspects tell law enforcement officers whether
> or not they intended to kill another person?"  Defendant claims that this
> question was a direct attack on his right to remain silent.
>
> After reviewing the motion, the court file, and the record, the Court finds
> that the statements, when considered in the context in which they were
> made, do not constitute an impermissible comment on the Defendant's
> right to remain silent.  See Pope v. State, 679 So. 2d 710 (Fla. 1996).
> Consequently, Defendant has failed to meet the first prong of Strickland in
> that he has failed to prove that counsel acted deficiently in failing to object
> to the prosecutor's question.  Since Defendant has failed to meet the first
> prong of Strickland, it is unnecessary to address the prejudice component.
> See Downs v. State, 740 So. 2d 506, 518 n.19 (Fla. 1999).  As such, no
> relief is warranted upon [this] ground.

(Respondent's Exhibit 10, p. 6) (court's record citations omitted).

      During voir dire the prosecutor inquired:

[PROSECUTOR]:   Now you understand - - well, you may not understand but let me tell you in a murder in the first degree charge, unlike murder in the second degree and manslaughter, the State has to prove, among other things, that the defendant intended to cause the death and that he premeditated.  Okay.

[PROSPECTIVE JUROR MS. VERAS]:  Okay.

[PROSECUTOR]:   Is that the first time you've heard that?

[PROSPECTIVE JUROR MS. VERAS]:  Yes.

[PROSECUTOR]:   Okay.  Whereas, in murder in the second degree the State does not have to prove intent, we just have to show some degree of, among other things, some degree of hatred, bad feelings towards the victim, that he caused the death, but not intended or premeditation.  Okay.  Everybody following me?

Manslaughter, which is the third type of homicide doesn't require premeditation or intent, it requires something called culpable negligence, negligence, DUI manslaughter, everyone['s] heard of that charge before.  The person doesn't have to intend to cause the death when they ran the red light and had an alcohol level of .25.  They didn't intend to cause the death but they were culpably negligent.  Everyone following me?

And that 's the difference from the charge we're on today, murder in the first degree.  We don't show culpable negligence.  We show intent to kill and premeditation.  Okay.  Does it surprise you to know, ma'am, that very seldom do suspects tell law enforcement officers whether or not they intended to kill another person?

[PROSPECTIVE JUROR MS. VERAS]:  Yes.

[PROSECUTOR]:   You understand that?

[PROSPECTIVE JUROR MS. VERAS]:  Um-hum.

[PROSECUTOR]:   That it's kind of hard to determine if the person who did kill him intended to do it because you got to kind of get in their mind, do you understand that?

However, does it surprise you to know that the law permits you to conclude that intent exists based on surrounding circumstances[?]  That is, you will look at all the facts that [are] before you and based on all the facts that [are] presented to you, you are permitted to conclude or not conclude that the person had the intent to kill.  You see what I'm saying?

[PROSPECTIVE JUROR MS. VERAS]:  Yes.

[PROSECUTOR]:  That even though you might not have any direct evidence of intent the law permits you to find intent circumstantially.  Okay.  And while I'm on that word let me see a show of hands who's ever heard the idea of circumstantial evidence.  Anyone ever heard that, circumstantial evidence?  Yeah, television, and if you are selected to sit on this jury you will find that one thing that real life differs from TV somewhat.  Okay.  Real life differs from what you see on TV because television often gives the impression that circumstantial evidence is a lesser quality of evidence, that it has a smell to it, you know, that it just - - objection, that's just circumstantial, you know.  Does it surprise you, ma'am, to know that under the law circumstantial evidence can be just as important as direct evidence?

[PROSPECTIVE JUROR MS. VERAS]:  Yes.

Viewed in the context of voir dire as a whole, the prosecutor's question was an attempt to describe for the venire the element of intent.  The prosecutor did not improperly comment on Mesa's right to remain silent.  Even assuming that counsel performed deficiently by failing to object to this specific question, Mesa fails to show resulting prejudice.  The state court's rejection of this claim amounts to neither an unreasonable application of Strickland nor an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1), (2).

## II.   OPENING AND CLOSING COMMENTS

Mesa did not testify.  Several grounds of this petition allege ineffective assistance of trial counsel for failure to object to the prosecutor's allegedly improper comments about Mesa's failure to either testify or present evidence.

To prove a prosecutorial misconduct claim, Mesa must show that the challenged conduct was both improper and prejudiced his substantial rights.  Sexton v. Howard, 55 F.3d 1557, 1559 (11th Cir. 1995).  An improper prosecutorial remark compels habeas corpus relief only if the remark is so egregious that the proceeding is rendered fundamentally unfair.  "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned."  Darden v. Wainwright, 477 U.S. 168, 181 (1986).  See also Smith v. Phillips, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.").  Darden, 477 U.S. at 181, teaches:

> The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'  Donnelly v. DeChristoforo, 416 U.S. 637, [643] . . . (1974).  Moreover, the appropriate standard of review in a petition for the writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'  Id., at 642 . . . .

Accord Tucker v. Kemp, 802 F.2d 1293, 1296 (11th Cir. 1986) (en banc) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair."), cert. denied, 480 U.S. 911 (1987).  A reviewing court must evaluate an allegedly improper comment in the context of both the prosecutor's entire closing argument and the trial as a whole because "[c]laims of prosecutorial misconduct are fact-specific

inquiries which must be conducted against the backdrop of the entire record." <u>United States v. Hall</u>, 47 F.3d 1091, 1098 (11th Cir. 1995). <u>Accord</u> <u>United States v. Young</u>, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial.").

**Ground Seven**

Mesa contends that trial counsel rendered ineffective assistance by failing to object to the prosecutor's comment during opening statement that the jury would not hear evidence explaining Mesa's brother's renting a car. Mesa alleges that the comment improperly shifted the burden of proof to him to produce evidence about the car.

Without an evidentiary hearing, the state post-conviction court rejected this claim in Mesa's Rule 3.850 motion:

> In [this] ground, Defendant claims defense counsel was constitutionally ineffective by failing to object to the prosecutor's comments on the evidence. Specifically, Defendant claims that the following statements were improper:
>
>> You're going to hear no evidence that there was anything wrong with his car, but he, the defendant's brother, is now in a rental car.
>
> Defendant claims that this comment was highly prejudicial and shifted the burden to the defense to prove that the Defendant's brother did have car trouble. However, during opening statement the State was merely outlining what facts it expected to prove at trial. Since the jury was aware that what the attorneys said during opening statements did not constitute evidence, the Court fails to see how the Defendant was prejudiced by the State's comment. Accordingly, the Defendant fails to show how counsel was deficient for failing to object since the jury was informed that opening

> statements merely provide an opportunity for the attorneys to tell the jury
> what evidence they expected to present at trial.  Additionally, the
> Defendant failed to show how he was prejudiced by counsel's failure to
> object.  Accordingly, Defendant fails to meet the test as set forth in
> <u>Strickland</u>.  As such, no relief is warranted upon [this] ground.

(Respondent's Exhibit 10, p. 8) (court's record citations omitted).

The record supports the state court's denial of relief.  In his preliminary instructions the trial judge advised the jury that what the attorneys said in their opening statements was not evidence and that the jurors were not to consider the attorneys' statements as evidence.  (Respondent's Exhibit 18, Vol. III, p. 123)  The prosecutor's opening statement was a brief recitation of what he anticipated the evidence would show.  Viewing the prosecutor's comment in the context of his entire opening statement and the trial as a whole, the statement neither rendered the trial fundamentally unfair nor infected the trial with such unfairness that the resulting conviction amounts to a denial of due process.  <u>See</u> <u>Donnelly v. DeChristoforo</u>, 416 U.S. at 642.  Mesa fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in rejecting this claim.  <u>See</u> 28 U.S.C. § 2254(d).

**Ground Eight**

Mesa contends that trial counsel rendered ineffective assistance by failing to object to the prosecutor's closing argument.  Mesa claims that the prosecutor invaded the province of the jury by misstating the law when he told the jury:

> So what do we know for sure and I mean, there's no dispute about this.
> We know that [the victim] was killed.  We know that Mr. Rios was at the
> scene when [the victim] was killed, and we know that Mr. Rios identified
> [Mesa] as the killer.

> Ladies and gentlemen, that is enough evidence under the law for you to
> return a verdict of guilty as charged that [sic] right there.

(Doc. 1, p. 31; Respondent's Exhibit 18, Vol. IV, p. 322).

The state post-conviction court rejected this claim in Mesa's Rule 3.850 motion

without an evidentiary hearing:

> In [this] ground, Defendant claims defense counsel was constitutionally
> ineffective by failing to object to the prosecutor's closing statement.
> Specifically, Defendant claims that the following statements were
> improper:
>
>> Ladies and gentlemen, that is enough evidence under the
>> law for you to return a verdict of guilty as charged that [sic]
>> right there. We talked about that during jury selection. We
>> discussed that. The question was - - during jury selection go
>> back in you[r] mind, the question was, can you find a person
>> guilty of a crime, even murder, on the testimony of just a
>> single witness?
>
> Defendant claims that these comments were improper as they invaded the
> exclusive fact-finding province of the jury and misstated the law. The
> Court finds Defendant's claim to be without merit. A prosecutor is allowed
> to argue during closing arguments that he or she has presented all the
> evidence he or she spoke about in opening statement. This comment did
> not constitute improper unsworn testimony, nor did it invade the exclusive
> [fact] finding-province of the jury. The State was merely arguing its view of
> the evidence presented in this case. See McArthur v. State, 801 So. 2d
> 1037 (Fla. 5th DCA 2001). Accordingly, Defendant fails to meet prong
> one of Strickland, in that he has failed to prove how counsel's performance
> was deficient. Since Defendant fails to meet the first prong, there is no
> need to address the prejudice component. See Downs v. State, 740
> So. 2d 506, 518 n.19 (Fla. 1999). As such, no relief is warranted upon
> [this] ground.

(Respondent's Exhibit 10, p. 9) (court's record citations omitted).

Closing argument is designed to "assist the jury in analyzing, evaluating and

applying the evidence." United States v. Pearson, 746 F.2d 787, 796 (11th Cir.1984).

While a prosecutor may not go beyond the evidence presented to the jury, the

prosecutor is not limited to a bare recitation of the facts; he may comment on the evidence and express the conclusions he contends the jury should draw from the evidence.  United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984).  In Florida, while "wide latitude is permitted in arguing to a jury," Breedlove v. State, 413 So.2d 1, 8 (Fla. 1982), such latitude does not extend to permitting improper argument.  Gore v. State, 719 So.2d 1197, 1200 (Fla. 1998).

The trial judge instructed the jury before closing argument that the attorneys' arguments were not evidence.  (Respondent's Exhibit 18, Vol. IV, p. 320)  In the context of the trial, the prosecutor's comment, even if improper, neither rendered the trial fundamentally unfair nor infected the trial with such unfairness that the resulting conviction amounts to a denial of due process.[5]  See Tucker v. Kemp, 802 F.2d at 1296. Mesa fails to show that, if counsel had objected to the prosecutor's closing argument, the jury would have acquitted him.  Consequently, Mesa fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in rejecting this claim.  See 28 U.S.C. § 2254(d).

**Ground Nine**

Mesa contends that trial counsel rendered ineffective assistance during closing argument by failing to object when the prosecutor "ma[d]e direct statements on the

---

[5]  The trial judge instructed the jury that, to find Mesa guilty of first-degree murder, the prosecutor had to prove (1) that the victim was dead, (2) that the death was caused by the criminal act of Mesa, and (3) that the killing was premeditated.  (Respondent's Exhibit 18, Vol. IV, pp. 357-58)  A jury is presumed to follow a court's instructions.  Weeks v. Angelone, 528 U.S. 225, 234 (2000); Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001).  The jury's guilty verdict for the lesser-included offense of second-degree murder shows that the jurors found unpersuasive the prosecutor's closing argument that the evidence supported a first-degree murder conviction.

factual content [of] a witness['s] testimony."  Mesa argues that the prosecutor's

statement that eyewitness Rios "got the facts wrong" improperly influenced the jury's

duty to evaluate a witness's credibility.

The state post-conviction court rejected this claim in Mesa's Rule 3.850 motion

without an evidentiary hearing:

> In [this] ground, Defendant claims defense counsel was constitutionally
> ineffective by failing to object to the prosecutor's comment on the State's
> witness testimony.  Specifically, Defendant claims that the following
> statements were improper:
>
>> Don't you weigh these kind of factors to trust identification,
>> even though clearly Mr. Rios screwed up on some of the
>> facts, right, ain't no doubt about that, he got it wrong about
>> the car having four doors versus two doors.  He got it wrong
>> who came in first and who came in second, right, but can
>> you doubt his selection of this individual knowing all of the
>> corroborating facts[?]
>
> Defendant claims that these comments were improper as they invaded the
> exclusive fact-finding [province] of the jury as it was the jury's job to
> ascertain whether Mr. Rios got the facts right or wrong.  However, the
> Court finds Defendant's claim to be without merit.  A prosecutor is allowed
> to argue during closing arguments that he or she has presented all the
> evidence he or she spoke about in opening statement.  This comment did
> not invade the exclusive [fact]-finding province of the jury.  The State was
> merely arguing its view of the evidence presented in this case.  See
> McArthur v. State, 801 So. 2d 1037 (Fla. 5th DCA 2001).  Accordingly,
> Defendant fails to meet prong one of Strickland, in that he has failed to
> prove how counsel's performance was deficient.  Since Defendant fails to
> meet the first prong, there is no need to address the prejudice component.
> See Downs v. State, 740 So. 2d 506, 518 n.19 (Fla. 1999).  As such, no
> relief is warranted upon [this] ground.

(Respondent's Exhibit 10, pp. 9-10) (court's record citations omitted).

Rios testified at trial on direct examination that he initially believed that the victim drove a white two-door car[6] and the shooter drove a pick-up truck.[7]  Rios acknowledged on both cross-examination and re-direct examination that the victim actually drove the pick-up truck.  (Respondent's Exhibit 18, Vol. II, pp. 198-200, 211-12, 216-17)  Rios further testified on re-direct examination to his uncertainty about whether the white car had two doors or four doors.[8]

––––––––––––––––––––

[6]  Testimony adduced at trial shows that Mesa owned a white, four-door Pontiac that he was driving on the day of the murder.  (Respondent's Exhibit 18, Vol. IV, p. 244, 247, 266, 280).

[7]  Rios testified:

Q:      If you would describe the vehicle operated by the person who was shot and killed?

A:      Well, at the beginning I said he was driving the white car and I said the guy that did the shooting was driving the pick-up truck.  At that time that's what I said because I was nervous and there was a lot of things going on around me.  When I left that day I started thinking that was wrong, the guy that did the shooting was actually driving the white car and the guy that got shot was the one driving the pick-up.

Q:      Okay.  Describe this white car, do you remember what make it was?

A:      I remember seeing it was - - what was it, a Grand-Am two-door sedan, something like [that] that's how the frame and make looked like.

(Respondent's Exhibit 18, Vol. II, p. 185).

[8]  Rios testified:

Q:      Is it possible that the vehicle involved was a four-door Pontiac as opposed to a two-door Pontiac?

A:      It could have been.

. . .

Q:      Are you positive whether it was a four-door or two-door?

A:      At that time I remember it being a two-door.  It could have been - - it could have been a four-door, you know, everything happened so fast that day I was too nervous.

(Respondent's Exhibit 18, Vol. II, p. 218).

The prosecutor's characterization that Rios "screwed up on some of the facts" was based on evidence properly adduced at trial.  The prosecutor correctly stated that Rios erroneously described Mesa's car as a two-door model rather than a four-door model.  Mesa fails to demonstrate how these comments rendered his trial fundamentally unfair.  Cargill v. Turpin, 120 F.3d 1366, 1379 (11th Cir. 1997).  In the context of the trial, the prosecutor's comments, even if improper, neither rendered the trial fundamentally unfair nor infected the trial with such unfairness that the resulting conviction amounts to a denial of due process.  Tucker v. Kemp, 802 F.2d at 1296.  Mesa fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in rejecting this claim.  See 28 U.S.C. § 2254(d)(1), (2).

**Ground Ten**

Mesa contends that trial counsel rendered ineffective assistance during closing argument by failing to object to the prosecutor's statements, "Why didn't the defendant drive his own car to Texas?," and "Have you heard any evidence that his car wasn't running?"  Mesa alleges that the prosecutor both improperly shifted the burden of proof to Mesa and improperly commented on Mesa's right to remain silent.

Without an evidentiary hearing, the state post-conviction court rejected this claim in Mesa's Rule 3.850 motion:

> In [this] ground, Defendant claims defense counsel was constitutionally ineffective by failing to object to the prosecutor shifting the burden of proof and commenting on the Defendant's right to remain silent.  Specifically, Defendant claims that the following statements were improper:
>
> > Why didn't he drive his car?  Where was his car?  What was wrong with his car?  Have you heard any evidence that his

- 32 -

> car wasn't running? . . . Why don't you drive your car if you
> want to go on a trip?

> Defendant claims that these comments were improper because they
> shifted the burden of proof and commented on the Defendant's right to
> remain silent.  However, the Court finds Defendant's claim to be without
> merit.  A prosecutor is allowed to argue during closing arguments that he
> or she has presented all the evidence he or she spoke about in opening
> statement.  This comment did not constitute improper unsworn testimony,
> nor did it invade the exclusive [fact] finding province of the jury.  The State
> was merely arguing its view of the evidence presented in this case.  See
> McArthur v. State, 801 So. 2d 1037 (Fla. 5th DCA 2001).  Accordingly,
> Defendant fails to meet prong one of Strickland, in that he has failed to
> prove how counsel's performance was deficient.  Since Defendant fails to
> meet the first prong, there is no need to address the prejudice component.
> See Downs v. State, 740 So. 2d 506, 518 n.19 (Fla. 1999).  As such, no
> relief is warranted upon [this] ground.

(Respondent's Exhibit 10, pp. 10-11) (court's record citations omitted).

A prosecutor cannot comment on the accused's silence at trial and cannot ask

the jury to draw an adverse inference from that silence.  United States v. Robinson, 485

U.S. 25, 32 (1988); Griffin v. California, 380 U.S. 609, 615 (1965).

> The Fifth Amendment prohibits a prosecutor from commenting directly or
> indirectly on a defendant's failure to testify.  A prosecutor's statement
> violates the defendant's right to remain silent if either (1) the statement
> was manifestly intended to be a comment on the defendant's failure to
> testify, or (2) the statement was of such a character that a jury would
> naturally and necessarily take it to be a comment on the failure of the
> accused to testify.  The question is not whether the jury possibly or even
> probably would view the remark in this manner, but whether the jury
> necessarily would have done so.

United States v. Blankenship, 382 F.3d 1110.1128 (11th Cir. 2004) (quoting United

States v. Knowles, 66 F.3d 1146. 1162-63 (11th Cir. 1995)).  A defendant bears the

burden of proving one of the two criteria to substantiate a claim that the prosecutor

violated his right to remain silent.  Knowles, 66 F.3d at 1163.

Evidence adduced at trial shows that Mesa owned a vehicle.  Mesa's brother (Fidel) testified that on the day of the murder Mesa came to Fidel's apartment and told Fidel that he wanted to "go travel."  (Respondent's Exhibit 18, Vol. IV, pp. 230-31)  Fidel testified that he rented a car that day and drove his brother to Texas.  (Respondent's Exhibit 18, Vol. IV, pp. 231-33, 240-41)  Fidel testified that he rented a car because his own car had "bad" tires and an expired tag.  (Respondent's Exhibit 18, Vol. IV, pp. 231, 241)

The prosecutor's statements during closing argument asked the jury to examine Fidel's testimony in considering its verdict.[9]  Mesa demonstrates neither that the statements were manifestly intended as a comment on the defendant's failure to testify nor that the jury necessarily interpreted the statements as comments on Mesa's failure to testify.  United States v. Blankenship, 382 F.3d at 1128.  Mesa likewise fails to show that the comments shifted the burden of proof to the defense.  Consequently, counsel had no basis to object.  Mesa fails to show that the state post-conviction court's rejection of this ineffective assistance claim resulted in either an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1), (2).

**Ground Eleven**

Mesa contends that trial counsel rendered ineffective assistance by advising Mesa not to testify at trial.  Mesa alleges that counsel "told [Mesa] that he would make a

---

[9]  The trial judge instructed the jury both that Mesa was "not required to present evidence or prove anything," and that the jury "must not view [Mesa's decision not to testify] as an admission of guilt or be influenced in any way by this decision."  (Respondent's Exhibit 18, Vol. IV, p. 362, 365)

terrible witness and no jury would believe him." (Doc. 1, p. 47) Mesa claims that he

adamantly advised counsel of his desire to testify but after counsel pursued a mistaken

identity defense, Mesa "felt as if it was too late to take the stand and claim self-defense

[and] therefore he agreed not to testify even though he wanted to." (Doc. 1, p. 47)

The state post-conviction court rejected this claim in Mesa's Rule 3.850 motion

after an evidentiary hearing:

> Defendant claims counsel was ineffective by misadvising Defendant not to testify. Specifically, Defendant claims that he wanted to testify and explain to the jury that he acted in self-defense and only shot the victim because the victim had slapped him at work and chased him with a machete. Defendant claims counsel advised him not to testify and told him that he would be a terrible witness, which no jury would believe. Defendant claims he would have testified had counsel not insisted against it.
>
> A review of counsel's testimony from the evidentiary hearing reflects that based on the facts of the case, counsel believed he most likely advised the Defendant not to testify,[10] and ultimately, it was the Defendant's choice not to. Counsel testified that he would have reviewed the waiver of a right to testify form with the Defendant. Counsel further testified that the judge presiding over the case would have gone over the waiver of a right to testify form with the Defendant. Furthermore, based on the Court's

---

[10] Counsel testified at the evidentiary hearing:

Q:   Do you have any independent recollection of having spoken to Mr. Mesa about his right to testify or not testify prior to the closing of the State's case?

A:   Prior to the closing of the State's case? I'm sure I did. I'm sure I - - I discussed it with him prior to trial.

. . .

Q:   Do you recall in this specific case with Mr. Mesa what your initial opinion was?

A:   I don't recall. I can give a pretty good guess. My guess would be that, given the nature of the case and the position and - - and the quirky set of facts we had, you know, that we were trying to work with, specifically him fleeing the jurisdiction which wasn't good, I probably would have advised him not to testify.

(Respondent's Exhibit 11, p. 48).

findings in ground two [that Mesa never advised counsel that he acted in self-defense], the record reflects that the Defendant did not inform counsel that he wanted to testify in order to explain to the jury that he acted in self-defense.

Based upon this testimony presented at the evidentiary hearing, the Court finds the testimony presented by defense counsel to be highly credible. Smith v. State, 697 So. 2d 991, 992 (Fla. 4th DCA 1997) (stating that following an evidentiary hearing the finder of fact can rely upon testimony it finds to be credible).  Furthermore, "counsel's strategic decisions will not be second-guessed on collateral attack."  Johnson v. State, 769 So. 2d 990, 1001 (Fla. 2000).  Moreover, "[s]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct."  Occhicone v. State, 768 So. 2d 1037, 1048 (Fla. 2000).  Therefore, the Defendant has failed to show that counsel's performance was deficient or that he was prejudiced.  The Court finds that the Defendant voluntarily chose not to testify on his own behalf. As such, the Defendant is not entitled to relief on [this] ground of his Motion for Postconviction Relief.

(Respondent's Exhibit 12, pp. 4-5).

A criminal defendant possesses a fundamental constitutional right to testify at trial.  Rock v. Arkansas, 483 U.S. 44, 51-53 (1987).  "Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide."  United States v. Teague, 953 F.2d 1525, 1533 (11th Cir. 1992).  See also Gallego v. United States, 174 F.3d 1196, 1197 (11th Cir. 1999) (holding that ineffective assistance occurs when (1) counsel refuses to honor a defendant's decision to testify or (2) counsel fails to inform a defendant that he has a right to testify and that the final decision whether to testify is the defendant's alone).  "Where the defendant claims a violation of his right to testify by defense counsel, the essence of the claim is that the action or inaction of the attorney deprived the defendant of the ability to choose whether

or not to testify in his own behalf." United States v. Teague, 953 F.2d at 1534.  To

prevail on an ineffective assistance claim alleging that counsel prevented a petitioner

from testifying, the petitioner must produce more than a bare, unsubstantiated allegation

to satisfy Strickland's requirements.  See Underwood v. Clark, 939 F.2d 473, 476 (7th

Cir. 1991) ("[I]n a subsequent collateral attack on the conviction [alleging ineffective

assistance for counseling the defendant not to testify], the defendant must produce

something more than a bare, unsubstantiated, thoroughly self-serving, and none too

plausible statement that his lawyer (in violation of professional standards) forbade him

to take the stand.").

At the close of the prosecution's case at trial the judge specifically questioned

Mesa about his decision to testify:

> THE COURT:   Mr. Mesa, I want to go over that form with you, sir, it's
> entitled Waiver of Right to Testify.[11]  Do you agree,
> sir, that the jury is not in the courtroom at this time?
>
> THE DEFENDANT: Yeah, outside.
>
> THE COURT:   No, no, no, do you agree that the jury is not in the
> courtroom at this time?
>
> THE DEFENDANT: Yes.
>
> THE COURT:   Okay.  Do you understand, sir, that you have the
> absolute constitutional right to testify in this case?
>
> THE DEFENDANT: Yes.
>
> THE COURT:   You also understand, sir, that you have the absolute
> constitutional right not to testify in this case?

_____

[11]  Mesa signed a Waiver of Right to Testify (Respondent's Exhibit 18, Vol. I, pp. 44-45) in which he
agreed to forego testifying at trial.  Mesa presents no challenge to the waiver's validity.

THE DEFENDANT: Yes.

THE COURT:          You understand that the decision to testify or not to
                   testify is yours and yours alone?

THE DEFENDANT: Yes.

THE COURT:          No one can make that decision, sir, except you, do
                   you understand that?

THE DEFENDANT: Yes.

THE COURT:          If you decide not to testify do you understand that I
                   am going to instruct the jury that they may not view
                   this as an admission of guilt or be influenced in any
                   way by your decision not to testify[?]

THE DEFENDANT: Yes.

THE COURT:          I'm going to ask you to talk to your attorney, listen to
                   his advice; then after you've done that make your
                   decision whether you want to testify or not.  Once
                   you've made your decision if you will put your initials
                   next to number eight or number nine on the second
                   page [of the waiver form], whichever is applicable,
                   and then sign it and give it to your attorney, have him
                   sign it, and he'll provide it to me for my signature.  But
                   before you listen to the advice of your attorney do you
                   have any questions of me with regard to the content
                   of that form?

THE DEFENDANT: No.

THE COURT:          All right.  Talk to your attorney, sir; then once you've
                   talked to him make the decision whether you want to
                   testify or not, please.

[COUNSEL]:          Judge, let me just say - -

THE COURT:          Wait a minute.  Go ahead.

[COUNSEL]:          Let me just say that I've been discussing this over the
                   past day and a half with Mr. Rios - - with Mr. Mesa as
                   well and he suggested to me from the get-go that he
                   had no intentions of testifying and his decision

remains the same today that he does not want to testify.

THE COURT:        Okay.  If you'd please execute the form.

(Respondent's Exhibit 18, Vol. IV, pp. 303-05).

During the Rule 3.850 evidentiary hearing Mesa testified that counsel advised him before trial "that it was not good for [Mesa] to testify," and that if not for counsel's advice not to testify, Mesa would have taken the stand on his own behalf. (Respondent's Exhibit 11, pp. 10-13, 19-20, 23, 27-28, 33-37)  Counsel testified at the evidentiary hearing that he spoke with Mesa about testifying and, to the best of counsel's recollection, advised Mesa that the decision whether to testify rested with Mesa.  (Respondent's Exhibit 11, pp. 45-48, 50-52)

Mesa fails to rebut by clear and convincing evidence the state court's factual finding that counsel reasonably discussed with him the advantages and disadvantages of testifying and that Mesa made a knowing and voluntary choice not to testify.  See 28 U.S.C. § 2254(e)(1).  Mesa also fails to show that absent counsel's alleged error, he would have taken the stand and the jury would have acquitted him.  Consequently, Mesa meets neither Strickland's deficient performance requirement nor the prejudice requirement to support a claim of ineffective assistance.  See Strickland v. Washington, 466 U.S. at 691-92.  Absent a demonstration of prejudice, Mesa cannot prevail on this claim of ineffective assistance of counsel.  See Heath v. Jones, 941 F.3d at 1130; Chandler v. United States, 218 F.3d at 1312-14.  Mesa fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent

or unreasonably determined the facts in rejecting this claim.  See 28 U.S.C.

§ 2254(d)(1), (2).

**Ground Twelve**

Mesa alleges that the cumulative effect of the prosecutor's shifting the burden of

proof (grounds six, seven, and ten), commenting on Mesa's right to remain silent

(grounds five and ten), and invading the jury's fact-finding role (grounds eight and nine)

rendered his trial fundamentally unfair.  Mesa further argues that counsel's failure to

object to the prosecutor's misconduct left his claims unpreserved for appellate review.

The state post-conviction court rejected this argument in Mesa's Rule 3.850.

(Respondent's Exhibit 12, p. 5)

Mesa's claim of cumulative error warrants no relief.  "Without harmful errors,

there can be no cumulative effect compelling reversal."  United States v. Barshov, 733

F.2d 842, 852 (11th Cir. 1984), cert. denied, 469 U.S. 1158 (1985).  See Conklin v.

Schofield, 366 F.3d 1191, 1210 (11th Cir. 2004) ("[T]he court must consider the

cumulative effect of [the alleged errors] and determine whether, viewing the trial as a

whole, [petitioner] received a fair trial as is [his] due under our Constitution.") (quoting

United States v. Blasco, 702 F.2d 1315, 1329 (11th Cir. 1983)).  Because each of the

individual claims of error lacks merit, no cumulative prejudicial effect results from the

alleged errors.  See Spears v. Mullin, 343 F.3d 1215, 1251 (10th Cir. 2003) ("Because

the sum of various zeroes remains zero, the claimed prejudicial effect of [trial counsel's]

cumulative errors does not warrant habeas relief."); Lorraine v. Coyle, 291 F.3d 416,

447 (6th Cir.) ("The Supreme Court has not held that distinct constitutional claims can

be cumulated to grant habeas relief."), amended on other grounds, 307 F.3d 459 (6th

Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 947 (2003).  Mesa fails to meet his burden of proving

that the state court either unreasonably applied controlling Supreme Court precedent or

unreasonably determined the facts in rejecting  this claim.

Accordingly, Mesa's petition for the writ of habeas corpus (Doc. 1) is **DENIED**.

The clerk shall enter a judgment against Mesa and close this action.

ORDERED in Tampa, Florida, on February 11, 2011.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE